Paul A. Smith appeals from a judgment of the Miami County Court of Common Pleas, which overruled his motion for leave to file a motion for a new trial. On August 5, 1993, Smith was convicted on two counts of raping his step-daughter Brandy Butts, a minor under the age of thirteen. On August 10, 1993, the trial court sentenced him to two life terms of imprisonment, to be served concurrently. On July 22, 1997, Smith filed a motion for leave to file a motion for a new trial, which the trial court overruled on July 24, 1997.
The facts and procedural history are as follows.
On February 22, 1993, Smith was indicted on three counts of rape, in violation of R.C. 2907.02(A)(1)(b), with the specification that he had used force or threat of force to compel the victim to submit. The first count pertained to conduct in the year 1989, and the second and third counts pertained to conduct in September 1992. On March 12, 1993, Smith filed a motion to suppress statements that he had made to police officers. Following a suppression hearing, the trial court overruled the motion on June 18, 1993.
The evidence produced by the state at Smith's trial, which occurred on August 3, 4, and 5, 1993, established the following:
Brandy testified that on one morning in 1989, when she had been seven years old, and on two mornings in September 1992, when she had been ten years old, Smith had forced her to have sex with him. According to Brandy, the events leading up to the rapes had been similar. She explained that she and Smith had been playfully wrestling with each other until he pulled down her underwear and got on top of her. In 1989, Brandy tried to get away but could not escape because Smith restrained her with his body weight. On the first occasion in September 1992, after having had sex with Brandy in the living room, Smith carried her to the bedroom and started having sex with her again. Brandy testified that Smith had covered her face with a pillow to muffle the sound of her crying. She explained that, although Smith had promised that it would never happen again, the next weekend, he ripped her underwear off and forced her to have sex with him in the bedroom. Brandy stated that, because she had been afraid that Smith would hurt her, she had not told her mother, Rita Smith, nor anyone else about the incidents until February 1993 in response to her best friend's suggestion that she share her most personal secret. Brandy's mother learned about the rape allegations from the mother of Brandy's best friend. Brandy testified that, on February 11, 1993, when her mother had asked if she had been raped by Smith, she answered yes. That same day, Rita Smith and a friend took Brandy to Stouder Memorial Hospital in Troy, Ohio for a medical examination.
Dr. Felino Tordilla, an emergency room physician at Stouder Memorial Hospital, testified that Brandy's mother had asked him to determine whether Brandy had engaged in sexual intercourse. Dr. Tordilla stated that, although his examination of Brandy had revealed a torn upper portion of the hymen, this condition "either could be from sexual penetration by * * * sexual intercourse or the use of other methods like [an] instrument or object." Because Dr. Tordilla could not state to a reasonable degree of medical certainty the cause of the torn hymen, the trial court would not permit him to state an opinion on whether sexual intercourse had caused it.
Following the medical examination, Brandy was taken to the Piqua Police Department where Police Officer Martin Grove interviewed her. Officer Grove testified that, after interviewing Brandy, he had gone to the Smiths' apartment, had found Smith, and had explained to him that he needed to speak to him at the police station. According to Officer Grove, Smith voluntarily went to the station. Officer Grove escorted Smith to the interview room and informed him about the complaint involving improper behavior between him and Brandy. Officer Grove stated that Smith had initially denied any sexual activity with Brandy, but then had admitted that, while rough housing with Brandy on her bed, he had touched her breasts and had pulled down her underwear and that, after his underwear had fallen down, "his penis did touch her vagina." Officer Grove testified that Smith at first had denied the occurrence of penetration, but then had stated that he could not remember whether or not it had happened. Officer Grove further related Smith's admissions that Brandy had been crying at the time, that he had apologized to her afterwards, and that "he had taken off her panties three or four times before when they were rough housing, but nothing had — ever had happened then."
Smith testified on his own behalf and denied that he had forced Brandy to engage in sexual intercourse with him.
The jury found Smith not guilty on count one and guilty on counts two and three. After Smith had been sentenced to two life terms of imprisonment, he appealed to this court on August 18, 1993. We affirmed the trial court's judgment on October 5, 1994. Specifically, we concluded that the conviction was not against the manifest weight of the evidence. Smith appealed our decision to the Supreme Court of Ohio, which overruled his motion for leave to file a delayed appeal and dismissed the case.
Smith's July 22, 1997 motion for leave to file a motion for a new trial and motion for a new trial were filed at the same time and based on allegations of misconduct by the prosecuting attorney and witnesses for the state and newly discovered exculpatory evidence. The evidence forming the basis of Smith's motions consisted of medical records of Dr. Tordilla's examination of Brandy, medical records of a 1996 gynecological examination of Brandy, 1993 records of the Miami County Children's Services Board involving the ability of Brandy's natural father, Jeffrey Butts, to obtain custody over her, 1984-1985 records of the children's services board regarding Jeffrey Butts' sexual assault against Brandy, and an August 29, 1985 letter written by Dr. J. Anthony Wurtsbaugh suggesting that Brandy had a history of possible sexual abuse and that his examination of her had revealed symptoms of sexual abuse "with penetration of at least the introitus." The 1984-1985 children's services board records indicated "a history of sexual abuse from the natural father." The "Behavior Contract Between Rita and Jeff Butts and Miami County Children's Services," signed on February 13, 1984, provided that Jeffrey Butts would,inter alia, "[n]ever get into bed with Brandy" and that Rita Butts would "[t]ake Brandy to the Well Child Clinic to have her checked for possible sexual abuse" and would "[n]ever leave Brandy alone with Jeff, even in the same room." Smith argued that, had he been able to present these documents at trial, the jury would probably have concluded that Brandy had been sexually assaulted by her natural father rather than by him, and thus, the state could not have proven the element of sexual penetration required to sustain the rape charges.
From the trial court's decision to overrule his motion for leave to file a motion for a new trial, Smith appeals and raises two assignments of error. Because Smith's assignments of error involve similar legal issues, we will treat them in a single discussion.
 I. THE TIME LIMIT FOR FILING A MOTION FOR A NEW TRIAL, PURSUANT TO CRIMINAL RULE 33(B) IS TOLLED BY THE OHIO REVISED CODE UNDER SECTION 2901.13(A)(1)(F), WHEN THE MOTION STATES THE USE OF PERJURY TO OBTAIN THE CONVICTION OF THE APPELLANT.
 II. THE TRIAL COURT ABUSED IT'S [SIC] DISCRETION AND COMMITTED PREJUDICIAL ERROR, WHEN IT OVERRULED THE PETITION OF THE APPELLANT FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE, RESULTING IN A DENIAL TO THE APPELLANT OF HIS RIGHTS TO DUE PROCESS AND THE EQUAL PROTECTION OF THE LAW UNDER THE SIXTH AND FOURTEENTH U.S.C.A. AMENDMENTS TO THE UNITED STATES CONSTITUTION: AND WHERE THERE WAS EVIDENCE OF AN INJURY TO TO [SIC] THE ALLEGED VICTIM AT ANOTHER TIME, CAUSE NOT COMMITTED BY THE APPELLANT, AND THE STATE RELIED ON THIS EVIDENCE TO PROVE ALL THE ESSENTIAL ELEMENTS OF THE OFFENSE, AND USING THIS EVIDENCE TO ENHANCE AND VOUCH FOR PERJURED TESTIMONY OF THE ALLEDGED [SIC] VICTIM.
Smith contends that the trial court should have granted his Crim.R. 33 motion for leave to file a motion for a new trial because he was entitled to a new trial on the grounds of misconduct of the prosecuting attorney and witnesses for the state and newly discovered evidence.
Although Smith claims that R.C. 2901.13 tolls the limitations periods for filing Crim.R. 33 motions, R.C. 2901.13, which sets forth the limitations periods for initiating criminal prosecutions, is inapplicable to Smith's motion for leave to file a motion for a new trial.
Crim.R. 33 provides, in pertinent part:
 (A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * *
 (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state; * * *
 (6) When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given. * * *
 (B) Motion for new trial; form, time. Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.
 Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.
 (C) Affidavits required. The causes enumerated in subsection (A)(2) and (3) must be sustained by affidavit showing their truth, and may be controverted by affidavit.
Because neither Smith's Crim.R. 33(A)(2) claim nor his Crim.R. 33(A)(6) claim were brought within the designated time limits, Crim.R. 33(B) required him to obtain leave before filing a motion for a new trial. State v. Hall (1995), 106 Ohio App.3d 183,191. To obtain leave to file a motion for a new trial based on prosecutorial or witness misconduct, Smith had to show "by clear and convincing proof" that he had been "unavoidably prevented" from filing the motion in a timely fashion. Crim.R. 33(B). For leave to file a motion for a new trial based on newly discovered evidence, Smith needed to show "by clear and convincing proof" that he had been "unavoidably prevented" from discovering such evidence within that time period. Crim.R. 33(B).
In Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus, the supreme court stated:
 Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.
In reviewing a trial court's refusal to grant leave to file a motion for a new trial, we will examine the record to determine whether the movant presented sufficient evidence to satisfy the "clear and convincing" standard; however, we cannot substitute our judgment for that of the trial court when competent and credible evidence supports the trial court's decision. State v. Schiebel
(1990), 55 Ohio St.3d 71, 74.
Smith's motion for leave to file a motion for new trial contained unverified, non-specific allegations that the state had wilfully hidden or withheld from him documentary evidence that, if presented at trial, would probably have led to an acquittal of the rape charges. He provided no support for his claims that the state had had control over these documents prior to trial, that it had chosen to withhold such evidence from him, and that he could not have known about such conduct in time to file a motion within fourteen days of the verdict. Because Smith failed to establish "by clear and convincing evidence" that he had been unavoidably prevented from filing a timely motion for new trial, the trial court acted reasonably in denying him leave to file a motion for a new trial based on prosecutorial misconduct. Likewise, Smith's unsupported allegations that Brandy and Dr. Tordilla offered perjured testimony fail to meet the clear and convincing standard.
Furthermore, Smith did not present clear and convincing evidence explaining why he had been unavoidably prevented from discovering these documents within one hundred twenty days of the verdict. He merely stated that "since his arrest for this offense, he has never been free to obtain the herein documents or had the skills to know how to obtain the evidence." Although a closer call is presented with respect to Smith's Crim.R. 33(A)(6) claims than his Crim.R. 33(A)(2) claims, the fact of his incarceration, without more, does not amount to clear and convincing proof that he was unavoidably prevented from discovering the evidence within the time limitations of Crim.R. 33(B). Thus, the trial court did not abuse its discretion in denying Smith leave to file a motion for new trial.
Even assuming, however, that Smith had satisfied the Crim.R. 33(B) standards for obtaining leave to file a motion for a new trial, he would not have been entitled to a new trial under either alleged basis for relief. Smith's claims under Crim.R. 33(A)(2) would not have led the trial court to grant him a new trial because he neglected to attach an affidavit showing the truth of his allegations of prosecutorial and witness misconduct, as required by Crim.R. 33(C). See State v. Rogers (1990), 68 Ohio App.3d 4,7 (citing Toledo v. Stuart (1983), 11 Ohio App.3d 292,293 for the proposition that a trial court may summarily dismiss a Crim.R. 33(A)(2) motion when the movant fails to attach an affidavit). Furthermore, Smith's claims under Crim.R. 33(A)(6) would not have provided him with a basis for obtaining a new trial because the new evidence did not disclose "a strong probability that it will change the result if a new trial is granted." Statev. Barber (1982), 3 Ohio App.3d 445, 447. Although Smith had not been able to present at trial the documentary evidence of prior sexual assault against Brandy, he did elicit from Rita Smith and Officer Grove that Brandy had a history of sexual assault by her natural father. During Rita Smith's direct examination, the following dialogue took place:
 Q. Rita, when you first learned of these allegations against Paul Smith in February, 1993, this wasn't the first time that Brandy had been victim of a sexual — an alleged sexual assault, isn't that correct?
A. That's correct.
 Q. Okay. Could you tell the Jury the other occasions where Brandy had been the victim of an alleged sexual assault? When did the first occasion occur?
A. A few months before she was two years old.
Rita Smith then explained that, upon arriving at home and seeing Jeffrey Butts watching television with Brandy, whose "training pants were down," she had suspected that he had molested the toddler. Rita Smith testified that she had immediately taken Brandy to Dr. Wurtsbaugh, who conducted an examination, determined that "she had been touched," and called the police and the children's services board. Rita Smith further testified that one day the following year, she had heard Brandy screaming and that Brandy had explained that "her Uncle Pat had hurt her — hurt her with a spoon." Rita Smith stated that when Dr. Wurtsbaugh had examined Brandy this time, he again determined that she had been molested. Smith also elicited from Officer Grove that he had been aware of the prior sexual assault against Brandy.
Because the jury found Smith guilty of rape despite having heard testimony that Brandy had been sexually assaulted in earlier years by her natural father, the trial court acted reasonably in finding that Smith's motion for a new trial had not shown that the outcome of a new trial, if granted, would probably be different than that of the original trial. Thus, even assuming that the trial court should have granted leave to file a motion for a new trial, Smith would not have been entitled to a new trial.
The assignments of error are overruled.
The judgment of the trial court will be affirmed.
YOUNG, P.J. and BROGAN, J., concur.
Copies mailed to:
David M. Henry
Paul Smith
Hon. Donald L. Dodd